No. 12-2484

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION,
        Plaintiff-Appellant,

        v.

FORD MOTOR CO.,
        Defendant-Appellee.

---

On Appeal from the United States District Court
for the Eastern District of Michigan
Hon. John Corbett O'Meara, Judge

---

OPPOSITION OF THE EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION TO FORD'S
PETITION FOR REHEARING *EN BANC*

---

P. DAVID LOPEZ
General Counsel

CAROLYN L. WHEELER
Acting Associate General Counsel

LORRAINE C. DAVIS
Assistant General Counsel

GAIL S. COLEMAN
Attorney

EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION
Office of General Counsel
131 M Street, NE, Room 5SW24L
Washington, DC 20507
(202) 663-4055
gail.coleman@eeoc.gov

## TABLE OF CONTENTS

Table of Authorities ................................................................................ ii

Statement of the Case ............................................................................ 1

    A. Statement of Facts ......................................................................... 1

    B. Panel Decision .............................................................................. 5

    C. Dissenting Opinion ....................................................................... 7

Argument .................................................................................................. 7

    The panel's decision complies with settled law. ............................. 7

        A. The Americans with Disabilities Act requires courts to look beyond an employer's characterization of a job function as "essential" ................................................................................... 7

        B.  Whether telework can be a reasonable accommodation of an employee's disability is, as it has always been, a highly fact-specific question ..................................................................... 8

        C.  Even employers that generally prohibit telework may have to allow it as a reasonable accommodation for a disabled individual under the ADA ................................................... 9

Conclusion ............................................................................................. 10

Certificate of Service

## TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..............................................7

*Harris v. J.B. Robinson Jewelers*, 627 F.3d 235 (6th Cir. 2010) ............................8

*Rorrer v. City of Stowe*, 743 F.3d 1025 (6th Cir. 2014) ..................................8, 9, 10

6th Cir. Rule 35(a) ................................................................................................7

The panel's opinion does not warrant *en banc* review.  Contrary to Ford's assertion, the ADA has always required courts to look beyond an employer's characterization of a job function as essential.  The reversal of summary judgment in this case, based on a unique set of facts, does not require anything new of other employers in other circumstances.  There is no reason for this Court to reconsider the panel's opinion *en banc.*

## STATEMENT OF THE CASE

### A.  Statement of Facts

Jane Harris was a resale steel buyer at Ford who served as an intermediary between companies that produce steel and companies that use the steel to produce parts.  (R.60-2, Gordon Decl. ¶ 3, Pg ID 1027)  From the beginning of her employment, Harris struggled with irritable bowel syndrome ("IBS"), an illness that causes uncontrollable diarrhea and fecal incontinence.  (R.60-6, Harris Dep. at 154, Pg ID 1063)  The incontinence sometimes became so bad that she soiled herself every time she stood up.  (R.67-3, Harris Dep. at 140, Pg ID 1384)  On bad days, she could not make it to work without having an accident in her car.  (R.41-3, Harris Dep. at 319, Pg ID 625)

Harris took leave during her IBS flare-ups.  (R.66-3, Harris Decl. ¶ 3, Pg ID 1262-63)  Her supervisors insisted that if she was too sick to come to work, then she was also too sick to work from home.  If she felt capable of working, they told

1

her, she would have to come to the office.  (R.60-2, Gordon Decl. ¶¶ 8-9, Pg ID 1029-30)  When Harris disregarded this directive and used her remote access to get work done while home sick, Ford treated the day as an "absence" and refused to pay her.  (R.60-6, Harris Dep. at 237, Pg ID 1071)  Ford also considered Harris "absent" when she worked in the office after core business hours, no matter how long she stayed.  (R.60-4, Jirik Decl. ¶ 5, Pg ID 1047)

In early 2009, Harris experienced her worst symptoms to date.  (R.41-3, Harris Dep. at 146, Pg ID 624)  She asked Ford to let her telecommute on an as-needed basis "up to four days per week" (an amount contemplated in Ford's written telework policy) as a reasonable accommodation to her disability.  (R.60-10, 2/19/09 email to Pray, Pg ID 1100)  She testified that if Ford had offered to let her telecommute 1-2 days per week, that would have been acceptable.  (R.66-3, Harris Decl. ¶ 18, Pg ID 1264)

Harris noted that she was already doing much of her work from home (R.60-21, 4/22/09 email to Horan, Pg ID 1171) and that several of her coworkers already telecommuted.  (R.66-21 & R.66-22, Telework Agreements, Pg. ID 1362, 1173)  She said that most of her work could be done via computer or telephone and said that if she was unable to work on a day she had a meeting with suppliers, she would call and reschedule.  Most meetings, she said, could be attended remotely

2

(R.66-10, 4/6/09 mtg notes at 1-2, Pg ID 1319-20); indeed, most interactions occurred through conference calls.  (R.66-3, Harris Decl. ¶ 3, Pg ID 1262-63)

Ford denied Harris's request.  (R.60-4, Jirik Decl. ¶ 9, Pg ID 1049)  Resale steel buyers, her supervisor said, constantly react to changing situations and must be available for group problem-solving.  Such problem-solving, he believed, was most effectively handled face-to-face.  (R.60-2, Gordon Decl. ¶ 11, Pg ID 1049)

Harris rejected Ford's offer to move her cubicle closer to the restroom.  (R.60-4, Jirik Decl. ¶ 9, Pg ID 1049)  This would not prevent her from soiling herself when she stood up or when she drove to work.  (R.66-10, 4/6/09 mtg notes at 2, Pg ID 1320)  Harris also rejected Ford's offer to let her seek another job within the company because her expertise was within Raw Materials Purchasing.  (R.66-10, 4/15/09 mgt notes at 4, Pg ID 1323)

In April, Harris filed a charge of discrimination with the EEOC.  (R.41-3, Harris Dep. at 329, Pg ID 627)  Shortly thereafter, her supervisor began calling Harris into the conference room for closed-door, one-on-one meetings that Harris considered physically threatening.  He yelled at her in a "military style" and told her that it would be "insubordination" if she got up and left the room.  (R.60-6, Harris Dep. at 218-20, Pg ID 1066)

In July, Harris's supervisor placed her on "Workplace Guidelines" – a supervisory tool for "assist[ing] an employee in achieving acceptable attendance."

(R.60-4, Jirik Decl. ¶ 3, Pg ID 1046)  Pursuant to these guidelines, Harris was

required to be at work every day at her regularly scheduled start time.  Any breach

of the guidelines, the document warned, could result in termination.  (R.66-14,

Workplace Guidelines, Pg ID 1337)

Three months after filing her EEOC charge, Harris received her first-ever

low performance review.  The review specifically pointed to her "poor attendance

and attendance reporting."  (R.60-16, 2009 Interim Rev., Pg ID 1141-42)  Her

supervisor placed her on a thirty day Performance Enhancement Plan ("PEP").

(*Id.*, Pg ID 1141)  When she failed to meet all of the plan objectives within thirty

days, Ford fired her.  (R.60-18, 7/29/09-8/28/09 Perf. Rev., Pg ID 1150)

The district court granted summary judgment to Ford on the EEOC's claims

that Ford had failed to accommodate Harris's disability and had retaliated against

her for filing an EEOC charge.  (R.68, Slip Op. at 14, Pg ID 1403)  "It is clear

from the record," the district court said, "that Harris was absent more often than

she was at work.  On this basis alone, Harris is not a 'qualified' individual under

the ADA."  (*Id.* at 9, Pg ID 1398)  The district court also deferred to Ford's

judgment that Harris could not successfully perform the essential functions of her

job from home, observing that "in general courts have found that working at home

is rarely a reasonable accommodation."  (*Id.* at 11-12, Pg ID 1400-01)  Finally, the

district court rejected the EEOC's retaliation claim because the EEOC did not

4

dispute "the specific performance deficiencies documented by Ford in the interim review." (*Id.* at 13, Pg ID 1402)

### B. Panel Decision

The panel reversed the award of summary judgment, finding a genuine issue of material fact on whether physical presence at Ford's worksite was an "essential function" of Harris's job. (Slip Op. at 9) "When we first developed the principle that attendance is an essential requirement of most jobs," the panel said, "technology was such that the workplace and an employer's brick-and-mortar location were synonymous. However, as technology has advanced in the intervening decades, and an ever-greater number of employers and employees utilize remote work arrangements, attendance at the workplace can no longer be assumed to mean attendance at the employer's physical location. . . . Determining whether physical presence is essential to a particular job is a '*highly fact specific*' *question.*" (*Id.* at 10 (quoting *Hoskins v. Oakland Cnty. Sheriff's Dep't*, 227 F.3d 719, 726 (6th Cir. 2000) (emphasis added)))

While acknowledging that courts "routinely defer to the business judgment of employers" regarding whether a particular job function is essential, the panel explained that other factors are also relevant. (*Id.* at 10, 11 (citing 29 U.S.C. § 1630.2(n)(2))) On summary judgment, the panel said, it was required to accept as true Harris's testimony that even when she was physically present at Ford's

5

facilities, most interactions occurred electronically.  (*Id.* at 12)  Ford presented no evidence that working from home would make Harris less available for on-site visits.  (*Id.*)  Additionally, Ford permitted some of Harris's coworkers to telework, "albeit on a more limited basis than Harris's initial request."  (*Id.* at 13)  Taken together, the panel concluded, the EEOC had offered enough evidence to raise a genuine issue of material fact as to whether physical attendance was an essential function of Harris's job.  (*Id.*)

Alternatively, the panel held, even if physical presence was an essential function, the EEOC had raised a genuine issue of material fact as to whether telework *during regular business hours* could be a reasonable accommodation under the ADA.  (*Id.*)  None of Ford's proposed alternative accommodations, the panel said, was an "indisputably reasonable means of accommodating Harris's disability" in light of evidence casting doubt on whether the proposed accommodations would have been effective.  (*Id.* at n.5, 16-17)

With respect to the retaliation claim, the panel pointed to evidence that Harris's supervisors treated her with hostility and issued her first bad performance review shortly after Harris filed her EEOC charge.  (*Id.* at 20)  The performance deficiencies that Ford cited in the review were ongoing problems for which Ford had never previously penalized her.  (*Id.* at 21)   In addition, the panel said,

because Harris had to wait for action from other people to satisfy her PEP goals, "a reasonable jury could infer that the PEP was designed to set Harris up to fail." (*Id.)*

## C.  Dissenting Opinion

Judge McKeague interpreted the panel's opinion as *holding* that four days of telework per week on an unpredictable basis is a reasonable accommodation under the ADA.  He also said that the EEOC had not *proved* [at summary judgment] that Ford's reliance on poor performance was a pretext for discrimination. (*Id.* at 23)

## Argument

### The panel's decision complies with settled law.

The panel's decision neither creates new law nor conflicts with existing precedent.  On this review of summary judgment, the Court correctly accepted the EEOC's evidence as true and drew all reasonable inferences in the EEOC's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Its reversal of summary judgment, both on the discrimination and retaliation claims, rests solely on the existence of genuine issues of material fact.  Rehearing *en banc* is, accordingly, unjustified.  *See* 6th Cir. R. 35(a).

## A.  The Americans with Disabilities Act requires courts to look beyond an employer's characterization of a job function as "essential."

Ford erroneously argues that the panel should have deferred to its business judgment that physical presence was an essential function of Harris's job.  (Petition

at 12-13). However, "the ADA states that the court should give 'consideration' to the employer's determination, not 'deference,' with the latter incorrectly implying that the employer's position creates a strong presumption in its favor." *Rorrer v. City of Stowe*, 743 F.3d 1025, 1042 (6th Cir. 2014) (citing 42 U.S.C. § 12111(8)). "The employer's determination about what functions are essential is certainly given weight, but it is one of seven factors the court should consider . . . ." *Id.* (citing 29 C.F.R. §§ 1630.2(n)(3)(iii), (iv); *Feldman v. Olin Corp.*, 692 F.3d 748, 755 (6th Cir. 2012)).

Ford's argument that the panel should not have considered Harris's testimony (Petition at 13) is equally unavailing. A plaintiff's testimony is, alone, sufficient to raise a genuine issue of material fact. *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010). In any event, the panel did not rely solely on Harris's testimony; it also considered the fact that Ford allowed other resale steel buyers to telecommute. (Slip Op. at 13) The panel acted appropriately in considering this evidence. *See id.* ("A court may not disregard evidence merely because it serves the interests of the party introducing it.").

## B.  Whether telework can be a reasonable accommodation of an employee's disability is, as it has always been, a highly fact-specific question.

The panel's opinion does not hold that telework can always, or even frequently, be a reasonable accommodation. The panel explained:

> [W]e are not rejecting the long line of precedent recognizing
> predictable attendance as an essential function of most jobs.  Nor are
> we claiming that, because technology has advanced, most modern
> jobs are amenable to remote work arrangements. . . .  [M]any jobs
> continue to require physical presence because the employee must
> interact directly with people or objects at the worksite.  We are merely
> recognizing that, given the state of modern technology, it is no longer
> the case that jobs suitable for telecommuting are "extraordinary" or
> "unusual."

(Slip Op. at 18)  The panel carefully examined the facts of this case and concluded

that Harris, unlike a custodian, pharmacy technician, or neonatal nurse, *might* be

able to perform the essential functions of her job from home.  Without reaching a

decision on the matter, the panel remanded for a factfinder to consider the

competing evidence.  (Slip Op. at 19)  This approach is consistent with this Court's

previous treatment of essential job functions.  *See Rorrer*, 743 F.3d at 1039

("Whether a job function is essential 'is a question of fact that is typically not

suitable for resolution on a motion for summary judgment.'" (quoting *Keith v.

County of Oakland*, 703 F.3d 918, 926 (6th Cir. 2013))).

## C.  Even employers that generally prohibit telework may have to allow it as a reasonable accommodation for a disabled individual under the ADA.

Ford predicts that employers will respond to this decision by revoking their

telework policies, so as to make physical presence appear to be an essential job

function.  Even if Ford's dire prediction is accurate, that policy concern is no basis

for revisiting the panel's fact-specific assessment of the evidence in this case.

9

Revoking telework policies would not prove that physical presence is actually necessary to perform a particular job function. "If an employer's judgment about what qualifies as an essential task were conclusive, 'an employer that did not wish to be *inconvenienced* by making a reasonable accommodation could, simply by asserting that the function is essential, avoid the clear congressional mandate that employers mak[e] reasonable accommodations.'" *Rorrer*, 743 F.3d at 1039 (citations omitted; emphasis in original). Whether physical presence is an essential function will have to be examined in such cases based on the specific factual scenario; employers cannot insulate themselves from review with preemptive no-telework policies.

## Conclusion

For the foregoing reasons, this Court should not grant rehearing *en banc*.

Respectfully submitted,

| | |
|---|---|
| P. DAVID LOPEZ | /s/ Gail S. Coleman |
| General Counsel | Attorney |
| | EQUAL EMPLOYMENT OPPORTUNITY |
| CAROLYN L. WHEELER | COMMISSION |
| Acting Associate General Counsel | Office of General Counsel |
| | 131 M Street, NE, Room 5SW24L |
| LORRAINE C. DAVIS | Washington, DC 20507 |
| Assistant General Counsel | (202) 663-4055 |
| | gail.coleman@eeoc.gov |

CERTIFICATE OF SERVICE

I, Gail S. Coleman, hereby certify that I filed the foregoing brief electronically in PDF format with the Court via the ECF system on this 18th day of July, 2014. I further certify that I served the foregoing brief electronically in PDF format through the ECF system this 18th day of July, 2014, to all counsel of record.

/s/ Gail S. Coleman
GAIL S. COLEMAN
Attorney
EQUAL EMPLOYMENT OPPORTUNITY
   COMMISSION
131 M Street, NE, Room 5SW24L
Washington, DC 20507
(202) 663-4055
gail.coleman@eeoc.gov